THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| CERTAIN UNDERWRITERS AT LLOYDS, LONDON, SUBSCRIBING TO POLICY NO. SYN-108553,<br><br>             Plaintiffs,<br><br>v.<br><br>CRESCIP FINNEGAN LAW FIRM, LLC, PETER J. CRESCI, CRESCI LAW FIRM, LLC, CRESCIP LIMITED LIABILITY COMPANY and CRESCIP FINNEGAN, LLC,<br><br>             Defendants. | Civil Action No.<br><br><br><br>**COMPLAINT** |

Plaintiffs, CERTAIN UNDERWRITERS AT LLOYDS, LONDON, SUBSCRIBING TO POLICY NO. SYN-108553 ("Underwriters"), by way of Complaint against Defendants, CRESCIP FINNEGAN LAW FIRM, LLC, PETER J. CRESCI, CRESCI LAW FIRM, LLC, CRESCIP LIMITED LIABILITY COMPANY and CRESCIP FINNEGAN, LLC (collectively, "Cresci Defendants"), state as follows:

**Nature of This Action**

1.    This action seeks a declaratory judgment pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202 as to the rights and obligations of the parties under an insurance policy issued by Underwriters to Crescip Finnegan Law Firm, LLC with respect to claims for alleged insurance coverage under a Lawyers Professional Liability Policy bearing Policy No. SYN-108553 issued to Crescip Finnegan Law Firm, LLC, effective from October 5, 2017 to October 5, 2018 the (the "Policy") including the actions styled: (1) *Pamela O'Donnell,*

*et al. v. Peter J. Cresci, et al.,* Docket No. HUD-L-000397-18, filed in the Superior Court of New Jersey, Hudson County, in which claims have been asserted against Peter J. Cresci, Cresci Law Firm, LLC, Crescip Limited Liability Company and Crescip Finnegan, LLC (the *"O'Donnell* Action"); and (2) *Deborah L. Shine v. Peter Cresci, et al.*, Docket No. HUD-L-005248-17, filed in the Superior Court of New Jersey, Hudson County, in which claims have been asserted against Peter Cresci and Cresci Law Firm, LLC (the *"Shine* Action") (collectively, the "Underlying Actions").

### The Parties

2.      Plaintiffs, Underwriters, are foreign citizens, located in London, England.

3.      On information and belief, Defendant, Crescip Finnegan Law Firm, LLC, is a New Jersey limited liability company, and all of its members are citizens and residents of New Jersey.

4.      On information and belief, Defendant, Cresci Law Firm, LLC, was a limited liability company chartered under New Jersey law, and all of its members are citizens and residents of New Jersey.

5.      On information and belief, Defendant, Crescip Limited Liability Company, is a limited liability company chartered under New Jersey law, and all of its members are citizens and residents of New Jersey.

6.      On information and belief, Defendant, Crescip Finnegan, LLC, was a limited liability company chartered under New Jersey law, and all of its members are citizens and residents of New Jersey.

7.      On information and belief, Peter J. Cresci is a citizen and resident of New Jersey.

### Jurisdiction and Venue

8.      This Court has jurisdiction over this action pursuant to 28 U.S.C. Section 1332(a)(1).

9.      There is complete diversity as between the plaintiff and the defendants, who are citizens of different states.

10.     The amount in controversy, including the potential costs of both defending and indemnifying Claimants in the Underlying Actions, exceeds $75,000, exclusive of interests and costs.

11.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and (c).

12.     An actual and justiciable controversy exists between the parties because Underwriters have disclaimed coverage for the Underlying Actions.

### The Underwriters Policy

13.     Underwriters issued a Lawyers Professional Liability Policy to named insured, Crescip Finnegan Law Firm, LLC, policy number SYN-108553, effective from October 5, 2017 to October 5, 2018 (the "Policy").  A copy of the Policy is attached to this complaint as Exhibit A.

14.     The Policy provides liability coverage of $1,000,000 per Claim, subject to a $1 million aggregate limit of liability and a $5,000 each Claim deductible.  The Policy is also subject to an October 5, 2017 Retroactive Date.

15.     The Policy's Insuring Agreement provides as follows:

> The Underwriters will pay on behalf of the INSURED all sums in excess of the deductible that the INSURED becomes legally obligated to pay as DAMAGES as a result of any CLAIM first made against the INSURED during the POLICY PERIOD, and reported to Underwriters in writing during the POLICY PERIOD by reason of any act, error, omission or PERSONAL INJURY

arising out of Professional Services rendered or that should have been rendered by the INSURED or by any person for whose negligent act, error, omission or PERSONAL INJURY the INSURED is legally liable, and arising out of the conduct of the INSURED's profession as a Lawyer or Notary Public, provided always that such act, error, omission or PERSONAL INJURY occurs:

A.  During the POLICY PERIOD; or

B.  on or after to the RETROACTIVE DATE, if any, and prior to the effective date of this policy.

16.     The Policy defines INSURED, in relevant part, as "[t]he Named Insured shown in the Declarations and any PREDECESSOR FIRM thereof" or "any lawyer or professional corporation who was or is a partner, officer, director or employee of the Named Insured, but only as respects professional services rendered on behalf of the Named Insured or any PREDECESSOR FIRM thereof[.]"  The Crescip Finnegan Law Firm, LLC is the Named Insured shown in the Declarations.  The term PREDECESSOR FIRM is defined as "any legal entity that was engaged in the practice of law to whose financial assets and liabilities the Named Insured is the majority successor in interest."

17.     The Policy includes a Specific Lawyer/Entity Exclusion Endorsement ("Specific Lawyer/Entity Exclusion"), which provides that "[t]his policy does not apply to any CLAIM, act, error, omission, circumstance or PERSONAL INJURY involving the individual lawyer or entity shown in the Schedule below."  The Schedule in the Specific Lawyer/Entity Exclusion states "Peter J. Cresci."

18.     The Policy includes Exclusion M (the "Prior Knowledge Exclusion"), which bars coverage for any CLAIM "based upon, arising out of, or attributable to any fact, circumstance or situation, which, prior to the inception date of the Policy, any INSURED knew or reasonably should have known might give rise to a CLAIM."

19.    Section I. of the Policy contains the following condition:

    A.  No action shall lie against the Underwriters unless, as a condition precedent thereto, the INSURED has fully complied with all the terms of this policy, nor until the amount of the INSURED's obligation to pay has been finally determined either by judgment against the INSURED after actual trial or by written agreement of the INSURED, the claimant and the Underwriters. Any person or organization or the legal representative thereof who has secured such judgment or written agreement will thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy.

20.    Section VIII. of the Policy contains the following conditions:

    B.  The INSURED must cooperate with the Underwriters in the defense, investigation and settlement of any CLAIM. Upon the Underwriter's request, the INSURED must submit to examination or questioning, attend hearings, depositions and trials and assist in effecting settlements, securing and giving evidence and obtaining the attendance of witnesses in the conduct of suits.

*    *    *

    D.  The INSURED shall not, without prior written consent of the Underwriters, make any payment, admit liability, settle any CLAIM, assume any obligations, agree to arbitration or any similar means of resolution of any dispute, waive any rights or incur any CLAIMS EXPENSES on behalf of the Underwriters.

**The *O'Donnell* Action**

21.    The operative Complaint in the *O'Donnell* Action was filed on January 29, 2018. A copy of the *O'Donnell* Complaint is attached as Exhibit B.

22.    The *O'Donnell* Action alleges, in pertinent part, that Defendants Peter Cresci, Cresci Law Firm, LLC, Crescip Limited Liability Company and Crescip Finnegan, LLC (the "O'Donnell Defendants") represented the underlying plaintiff, Pamela O'Donnell, in connection with a wrongful death Action arising out of the death of Ms. O'Donnell's husband and daughter in a vehicle collision. Ms. O'Donnell alleges that the O'Donnell Defendants committed legal

5

malpractice by failing to comply with the statute of limitations applicable to Ms. O'Donnell's claims against the New Jersey Turnpike Authority, resulting in a dismissal of those claims.

23.    The *O'Donnell* Action specifically alleges that, as early as February 23, 2016, Ms. O'Donnell retained the O'Donnell Defendants to represent her in connection with a lawsuit against all potentially liable parties, including the New Jersey Turnpike Authority, with regard to a fatal February 22, 2016 vehicle collision that resulted in the death of Ms. O'Donnell's husband and daughter.  Exhibit B at ¶¶ 9, 15.

24.    The *O'Donnell* Action claims that the O'Donnell Defendants failed to comply with the mandatory pre-suit notice requirements of the New Jersey Tort Claims Act by not serving a Notice of Claim directly upon the New Jersey Turnpike Authority within 90 days of the accrual of Ms. O'Donnell's cause of action.  Exhibit B at ¶ 21.   Rather, the *O'Donnell* Action alleges that the O'Donnell Defendants improperly served the State of New Jersey, Tort and Contract Unit with a Notice of Claim on or about May 16, 2016.  Complaint at ¶ 16.  The time to properly serve the New Jersey Turnpike Authority expired in May 2016.  *See* Exhibit B at ¶ 15.

25.    Ms. O'Donnell subsequently discharged the O'Donnell Defendants on or about August 24, 2016 and retained a new law firm, which filed a complaint on October 8, 2016 alleging wrongful death, survivorship and *Green v. Bittner* on behalf of Ms. O'Donnell, which named the New Jersey Turnpike Authority as a defendant.  Exhibit B at ¶¶ 23-24.

26.    The New Jersey Turnpike Authority filed a motion to dismiss the Wrongful Death Action on October 7, 2016 for failure to file a timely Notice of Claim, which the trial court denied.  Exhibit B at ¶¶ 25-27.  The *O'Donnell* Action alleges that the New Jersey Turnpike appealed the trial court's decision, and the Appellate Division issued a written opinion on January 23, 2018 reversing the trial court's denial of the New Jersey Turnpike Authority's

motion to dismiss.  Exhibit B at ¶ 29.  The Appellate Division specifically held that the O'Donnell Defendants failed to notify the New Jersey Turnpike Authority within the 90-day Tort Claim Notice period.  Exhibit B at ¶ 30.

27.     The *O'Donnell* Action alleges that the O'Donnell Defendants' conduct fell outside acceptable professional standards and prevented Ms. O'Donnell from litigating her claims against and recovering compensation from the New Jersey Turnpike Authority.  Exhibit B at ¶ 34.

28.     After several alleged failed attempts to serve the O'Donnell Defendants with the *O'Donnell* Action, the Superior Court of New Jersey, Hudson County granted the O'Donnell claimants' Motion for Substituted Service of the O'Donnell Action directly upon Underwriters.

29.     Underwriters issued coverage position letters to the O'Donnell Defendants disclaiming any obligation to indemnify the O'Donnell Defendants and reserving all rights under the Policy with respect to the *O'Donnell* Action. A copy of the letters issued to the O'Donnell Defendants are attached hereto as Exhibit C.

30.     Given that substituted service of the *O'Donnell* Action has been ordered and made upon Underwriters, and the O'Donnell Defendants failed to cooperate with Underwriters in any fashion as required under the Policy, Underwriters are proactively seeking a judicial declaration of their rights and responsibilities as respects the O'Donnell Defendants and the *O'Donnell* Action.

## The *Shine* Action

31.     The operative Complaint in the *Shine* Action was filed on December 28, 2017.  A copy of the *Shine* Complaint is attached hereto as Exhibit D.

32.     The *Shine* Action alleges, in pertinent part, that Ms. Shine sent a letter to her employer, the Bayonne Board of Education (the "Board") on August 26, 2010 alleging discrimination based upon the Board's failure to provide Ms. Shine with a permanent administrative position.  Exhibit D at ¶ 8.

33.     On November 18, 2010, Ms. Shine allegedly retained Defendants Peter Cresci and Cresci Law Firm, LLC (the "Shine Defendants") to represent her in connection with her claims against the Board under the First and Fourteenth Amendments, 42 U.S.C. § 1983, Title VII of the Civil Rights Act, Equal Pay Act, Title IX of the Education Amendments on 1972, Conscientious Employment Act ("CEPA") and common law claims of constructive discharge and breach of the implied covenant of good fair dealing arising from her employment with and constructive discharge by the Board (the "Discrimination Action").  Exhibit D at ¶ 1.

34.     Ms. Shine asserts that the Shine Defendants failed to timely file a charge of discrimination with the EEOC within 180 days of the alleged discriminatory practice, or 300 days where there was an appropriate cross-filing of a charge with a state agency.  Exhibit D at ¶¶ 15-16.

35.     Ms. Shine alleges that although the Shine Defendants never obtained the required right to sue letter from the EEOC, they proceeded to file a complaint on Ms. Shine's behalf in the United States District Court for the District of New Jersey on April 30, 2013.  Exhibit D at ¶ 17.

36.     Ms. Shine contends that the Third Circuit Court of Appeals held that the statute of limitations applicable to Ms. Shine's claims under Title VII, Title IX and 42 U.S.C. § 1983 began to run on August 26, 2010, when Ms. Shine issued her letter to the Board and that the statute of limitations applicable to her Equal Pay Act claim began to run when she received her last offending paycheck.  Exhibit D at ¶ 18.

37.     The Third Circuit Court of Appeals issued its ruling on September 22, 2015.  A copy of the ruling is attached hereto as Exhibit E.

38.     Ms. Shine alleges causes of action for: (1) negligence and (2) breach of contract. *See* Exhibit D.

39.     Underwriters issued coverage position letters to the Cresci Defendants disclaiming any obligation to defend or indemnify the Cresci Defendants and reserving all rights under the Policy with respect to the *Shine* Action. A copy of the letters are attached as Exhibit F.

**COUNT I**
**Declaratory Judgment**
**There Is No Duty To Defend or Indemnify With Respect To The O'Donnell Action**
**Because The Policy's Specific Lawyer/Entity Exclusion Precludes Coverage.**

40.     Underwriters incorporate Paragraphs 1 through 39 as though fully set forth herein.

41.     Under the Policy's Specific Lawyer/Entity Exclusion, coverage does not apply to any "CLAIM, act, error, omission, circumstance or PERSONAL INJURY involving" Peter J. Cresci.

42.     The allegations in the O'Donnell Action relate to Peter Cresci's alleged malpractice in connection with his representation of Ms. O'Donnell in her wrongful death action.

43.     As such, the O'Donnell Action alleges a CLAIM, act, error, omission, circumstance or PERSONAL INJURY involving Peter Cresci.

44.     Accordingly, Underwriters owe no duty to defend or indemnify the Cresci Defendants for the O'Donnell Action under the Policy.

45.     There is an actual and justiciable controversy between the parties, which may be determined by a judgment or order of this Court.

46.     This Court has the power to declare and adjudicate the rights and liabilities of the parties hereto under the terms and provisions of the policies of insurance referred to herein and to

adjudicate the final rights of all parties and to give such other and further relief as may be necessary to enforce the same.

## COUNT II
### Declaratory Judgment
**There Is No Duty To Defend or Indemnify With Respect To The *Shine* Action Because The Policy's Specific Lawyer/Entity Exclusion Precludes Coverage.**

47.     Underwriters incorporate Paragraphs 1 through 46 as though fully set forth herein.

48.     Under the Policy's Specific Lawyer/Entity Exclusion, coverage does not apply to any "CLAIM, act, error, omission, circumstance or PERSONAL INJURY involving" Peter J. Cresci.

49.     The allegations in the *Shine* Action relate to Peter Cresci's alleged malpractice in connection with his representation of Ms. Shine in her discrimination action.

50.     As such, the *Shine* Action alleges a CLAIM, act, error, omission, circumstance or PERSONAL INJURY involving Peter Cresci.

51.     Accordingly, Underwriters owe no duty to defend or indemnify the Cresci Defendants for the *Shine* Action under the Policy.

52.     There is an actual and justiciable controversy between the parties, which may be determined by a judgment or order of this Court.

53.     This Court has the power to declare and adjudicate the rights and liabilities of the parties hereto under the terms and provisions of the policies of insurance referred to herein and to adjudicate the final rights of all parties and to give such other and further relief as may be

## COUNT III
### Declaratory Judgment
**There Is No Duty To Defend or Indemnify With Respect To The O'Donnell Action Because The Policy's Insuring Agreement is Not Triggered**

54.     Underwriters incorporate Paragraphs 1 through 53 as though fully set forth herein.

55.     The Policy's Insuring Agreement is only triggered, in relevant part, with respect to an act, error, omission or PERSONAL INJURY that occurs "during the POLICY PERIOD" or "on or after to the RETROACTIVE DATE, if any, and prior to the effective date of this Policy."

56.     The Policy is subject to the October 5, 2017 RETROACTIVE DATE, as set forth in the Policy Declaration.

57.     The *O'Donnell* Action alleges that the O'Donnell Defendants were engaged as early as February 23, 2016 and were discharged on August 24, 2016.

58.     Further, the *O'Donnell* Action asserts that the time to properly serve the New Jersey Turnpike Authority with the Notice of Claim expired in May 2016, and that the O'Donnell Defendants committed malpractice by failing to comply with that deadline.

59.     As such, all of the acts, errors or omissions which form the subject of the *O'Donnell* Action took place prior to the Policy's October 5, 2017 RETROACTIVE DATE.

60.     Accordingly, the Policy's Insuring Agreement is not triggered with respect to the O'Donnell Action, and Underwriters owe no duty to defend or indemnify the Cresci Defendants for the *O'Donnell* Action under the Policy.

61.     There is an actual and justiciable controversy between the parties, which may be determined by a judgment or order of this Court.

62.     This Court has the power to declare and adjudicate the rights and liabilities of the parties hereto under the terms and provisions of the policies of insurance referred to herein and to adjudicate the final rights of all parties and to give such other and further relief as may be necessary to enforce the same.

## COUNT IV
### Declaratory Judgment
**There Is No Duty To Defend Or Indemnify With Respect To The *Shine* Action Because The Policy's Insuring Agreement is Not Triggered.**

63.     Underwriters incorporate Paragraphs 1 through 62 as though fully set forth herein.

64.     The Policy's Insuring Agreement is only triggered, in relevant part, with respect to an act, error, omission or PERSONAL INJURY that occurs "during the POLICY PERIOD" or "on or after to the RETROACTIVE DATE, if any, and prior to the effective date of this Policy."

65.     The Policy is subject to the October 5, 2017 RETROACTIVE DATE, as set forth in the Policy Declaration.

66.     The *Shine* Action alleges that Ms. Shine's claims were time-barred at the time the Shine Defendants filed the Complaint in the Discrimination Action on April 20, 2013 and that the Shine Defendants committed malpractice by failing to file a charge of discrimination with the EEOC before that date.

67.     As such, all of the acts, errors or omissions which form the subject of the *Shine* Action took place prior to the Policy's October 5, 2017 RETROACTIVE DATE.

68.     Accordingly, the Policy's Insuring Agreement is not triggered with respect to the *Shine* Action, and Underwriters owe no duty to defend or indemnify the Cresci Defendants for the *Shine* Action under the Policy.

69.     There is an actual and justiciable controversy between the parties, which may be determined by a judgment or order of this Court.

70.     This Court has the power to declare and adjudicate the rights and liabilities of the parties hereto under the terms and provisions of the policies of insurance referred to herein and to adjudicate the final rights of all parties and to give such other and further relief as may be necessary to enforce the same.

## COUNT V
### Declaratory Judgment
**There Is No Coverage Available for the *O'Donnell* Action Because
The Policy's Prior Knowledge Exclusion Precludes Coverage.**

71.     Underwriters incorporate Paragraphs 1 through 70 as though fully set forth herein.

72.     The Prior Knowledge Exclusion in the Policy bars coverage for any CLAIM "based upon, arising out of, or attributable to any fact, circumstance or situation, which, prior to the inception date of the Policy, any INSURED knew or reasonably should have known might give rise to a CLAIM." The Policy incepted on October 5, 2017.

73.     The *O'Donnell* Action alleges the O'Donnell Defendants were discharged on August 24, 2016.

74.     Further, the *O'Donnell* Action asserts that the time to properly serve the New Jersey Turnpike Authority with the Notice of Claim expired in May 2016.

75.     Given that the O'Donnell Defendants failed to comply with the deadline to serve the Notice of Claim and were discharged prior to the inception of the Policy on October 5, 2017, the *O'Donnell* Action is based upon, arises out of or is attributable to any fact, circumstance or situation which the O'Donnell Defendants knew or reasonably should have known might give rise to a CLAIM prior to the inception of the Policy.

76.     Accordingly, the Prior Knowledge Exclusion applies, and Underwriters owe no duty to defend or indemnify the Cresci Defendants for the *O'Donnell* Action under the Policy.

77.     There is an actual and justiciable controversy between the parties, which may be determined by a judgment or order of this Court.

78.     This Court has the power to declare and adjudicate the rights and liabilities of the parties hereto under the terms and provisions of the policies of insurance referred to herein and to

adjudicate the final rights of all parties and to give such other and further relief as may be necessary to enforce the same.

**COUNT VI**
**Declaratory Judgment**
**There Is No Coverage Available for the *Shine* Action Because**
**The Policy's Prior Knowledge Exclusion Precludes Coverage.**

79.    Underwriters incorporate Paragraphs 1 through 78 as though fully set forth herein.

80.    The Prior Knowledge Exclusion in the Policy bars coverage for any CLAIM "based upon, arising out of, or attributable to any fact, circumstance or situation, which, prior to the inception date of the Policy, any INSURED knew or reasonably should have known might give rise to a CLAIM." The Policy incepted on October 5, 2017.

81.    The *Shine* Action alleges that Ms. Shine's claims were time-barred at the time the Shine Defendants filed the Complaint in the Discrimination Action on April 20, 2013 and that the Shine Defendants committed malpractice by failing to file a charge of discrimination with the EEOC before that date.

82.    On September 22, 2015, the Third Circuit Court of Appeals issued its ruling affirming the District Court's holding that the statute of limitations had expired prior to the time the Shine Defendants filed the *Shine* Action.

83.    Given that the Third Circuit Court of Appeals confirmed that the Shine Defendants failed to comply with the statute of limitations prior to the inception of the Policy on October 5, 2017, the *Shine* Action based upon, arises out of or is attributable to any fact, circumstance or situation which the Shine Defendants knew or reasonably should have known might give rise to a CLAIM prior to the inception of the Policy.

84.    Accordingly, the Prior Knowledge Exclusion applies, and Underwriters owe no duty to defend or indemnify the Cresci Defendants for the *Shine* Action under the Policy.

85.     There is an actual and justiciable controversy between the parties, which may be determined by a judgment or order of this Court.

86.     This Court has the power to declare and adjudicate the rights and liabilities of the parties hereto under the terms and provisions of the policies of insurance referred to herein and to adjudicate the final rights of all parties and to give such other and further relief as may be necessary to enforce the same.

**COUNT VII**
**Declaratory Judgment**
**There Is No Coverage Available For The *O'Donnell* Action**
**Because The Cresci Defendants Breached the Policy's Cooperation Clause.**

87.     Underwriters incorporate Paragraphs 1 through 86 as though fully set forth herein.

88.     Section VIII.B. of the Policy requires the INSURED to cooperate with Underwriters in the defense, investigation and settlement of any CLAIM.

89.     In the *O'Donnell* Action, the claimants have sought to the Court has entered an Order for Substituted Service.

90.     Underwriters have attempted to contact the Cresci Defendants on multiple occasions regarding the *O'Donnell* Action but the Cresci Defendants have not cooperated with Underwriters in the defense and investigation of the *O'Donnell* Action.

91.     The Cresci Defendants have, therefore, failed to cooperate with Underwriters in the defense, investigation and settlement of the *O'Donnell* Action and are in breach of the Policy's Cooperation Clause.

92.     As a result, the Cresci Defendants have forfeited coverage under the Policy, and Underwriters do not have a duty to defend or indemnify the Cresci Defendants in the *O'Donnell* Action.

93.     Section VIII.D. of the Policy provides that the INSURED shall not, without the prior written consent of the Underwriters, make any payment, admit liability, settle any CLAIM, or assume any obligations.

94.     Additionally, Section I. of the Policy provides as a condition precedent to any action against Underwriters the INSURED must fully comply with all the Policy's terms and that no action may be brought against Underwriters until the amount of the INSURED's obligation to pay has been determined either by a judgment against the INSURED or by a written agreement of the INSURED, the claimant and Underwriters.

95.     Accordingly, to the extent that the Cresci Defendants agree to any settlement or any assignment in the *O'Donell* Action without Underwriters' consent, they will be in breach of the Policy and will have further forfeited coverage under the Policy for the O'Donnell Action.

96.     There is an actual and justiciable controversy between the parties, which may be determined by a judgment or order of this Court.

97.     This Court has the power to declare and adjudicate the rights and liabilities of the parties hereto under the terms and provisions of the policies of insurance referred to herein and to adjudicate the final rights of all parties and to give such other and further relief as may be necessary to enforce the same.

## COUNT VIII
### Declaratory Judgment
### There Is No Coverage Available For The *Shine* Action
### Because The Cresci Defendants Breached the Policy's Cooperation Clause.

98.     Underwriters incorporate Paragraphs 1 through 97 as though fully set forth herein.

99.     Section VIII.B. in the Policy requires the INSURED to cooperate with Underwriters in the defense, investigation and settlement of any CLAIM.

100.    Underwriters have attempted to contact the Cresci Defendants on multiple occasions regarding the *Shine* Action but the Cresci Defendants have not cooperated with Underwriters in the defense and investigation of the Shine Action.

101.    The Cresci Defendants have therefore failed to cooperate with Underwriters in the defense, investigation and settlement of the *Shine* Action and are in breach of the Policy's Cooperation Clause.

102.    As a result, the Cresci Defendants have forfeited coverage under the Policy, and Underwriters do not have a duty to defend or indemnify the Cresci Defendants in the *Shine* Action.

103.    Section VIII.D. of the Policy provides that the INSURED shall not, without the prior written consent of the Underwriters, make any payment, admit liability, settle any CLAIM, or assume any obligations.

104.    Additionally, Section I. of the Policy provides as a condition precedent to any action against Underwriters the INSURED must fully comply with all the Policy's terms and that no action may be brought against Underwriters until the amount of the INSURED's obligation to pay has been determined either by a judgment against the INSURED or by a written agreement of the INSURED, the claimant and Underwriters.

105.    Accordingly, to the extent that the Cresci Defendants agree to any settlement or any assignment in the *Shine* Action without Underwriters' consent, they will be in breach of the Policy and will have further forfeited coverage under the Policy for the O'Donnell Action.

106.    There is an actual and justiciable controversy between the parties, which may be determined by a judgment or order of this Court.

107.     This Court has the power to declare and adjudicate the rights and liabilities of the parties hereto under the terms and provisions of the policies of insurance referred to herein and to adjudicate the final rights of all parties and to give such other and further relief as may be necessary to enforce the same.

WHEREFORE, the Plaintiff, Certain Underwriters at Lloyds, London, Subscribing to Policy No. SYN-108553, request that this court enter judgment in their favor and against the O'Donnell Defendants as follows:

1.     Declaring that the Policy does not afford coverage to the Cresci Defendants for the *O'Donnell* Action;

2.     Declaring that the Policy does not afford coverage to the Cresci Defendants for the Shine Action;

3.     Declaring that Underwriters have no duty to defend the Cresci Defendants in the *O'Donnell* Action and are relieved of any further duty to defend the Cresci Defendants in the *O'Donnell* Action;

4.     Declaring that Underwriters have no duty to defend the Cresci Defendants in the *Shine* Action;

5.     Declaring that Underwriters have no duty to indemnify the Cresci Defendants for any judgment entered or settlement reached in the *O'Donnell* Action;

6.     Declaring that Underwriters have no duty to indemnify the Cresci Defendants for any judgment entered or settlement reached in the Shine Action;

7.     Declaring that Underwriters have no obligation to pay any judgment entered against the Cresci Defendants or settlements reached by the Cresci Defendants in the *O'Donnell* Action;

8.      Declaring that Underwriters have no obligation to pay any judgment entered against the Cresci Defendants or settlements reached by the Cresci Defendants in the *Shine* Action;

9.      Declaring that Underwriters are entitled to reimbursement for any costs and fees incurred in defending the Cresci Defendants in the *O'Donnell* Action; an

10.     Awarding Underwriters costs and attorneys' fees incurred in this Action and any and all such further relief as the Court deems just and appropriate.

Kennedys CMK LLP
Attorneys for Plaintiff, Certain Underwriters
at Lloyds, London, Subscribing to Policy
No. SYN-108553

By: /s/ Kristin V. Gallagher, Esq.
      Kristin V. Gallagher, Esq.
      Daniel Pickett, Esq.
      120 Mountain View Boulevard
      P.O. Box 650
      Basking Ridge, New Jersey 07920
      (908) 848-6300
      (908) 848-6310 (fax)
      kristin.gallagher@kennedyscmk.com
      daniel.pickett@kennedyscmk.com

Dated: July 31, 2018